RENATO IAFRATE *vs.* G. RUSSELL RAMSDEN, *City Treasurer.* ALPHONSE CERRITO *vs.* SAME.

MAY 2, 1963.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

PAOLINO, J. These two actions of trespass on the case were brought by the plaintiffs against the city of Cranston for injuries suffered by them by the collapse of a wall of a school building being erected on land owned by the city. The cases were heard together before a justice of the superior court on the defendant's demurrer in each case to the plaintiff's second amended declaration. The cases are before this court on the plaintiff's exception in each case to the ruling of the trial justice sustaining the defendant's demurrer.

Both cases raise the same basic issues and therefore we shall treat them as one. In their writs and declarations plaintiffs describe these actions as "trespass on the case for negligence," but in their briefs they state they have pleaded that a nuisance has been created and maintained by the city and that as a direct result thereof plaintiffs have sustained serious and permanent injuries.

The principal issue raised by plaintiffs is whether the facts alleged constitute an actionable nuisance.

The declaration in each case is in four counts. The following allegations appear in all four. At some time prior to November 21, 1956 the city entered into a contract with a general contractor for the erection of a school on land owned by the city, in accordance with plans and specifications furnished by the city. The general contractor subsequently engaged a subcontractor to perform work in the erection of the proposed school. The general contract provided for the erection of a certain wall.

The general contractor, pursuant to the plans and specifications, erected a freestanding and unsupported wall about 80 feet long and about 18 to 20 feet high consisting of cin-

der blocks and brick facing with no openings or windows. It was to form one of the walls of the school building. The wall rested on the foundation merely by virtue of its weight without adequate attachment of the bricks and cinder blocks thereto and with no wall bracing whatsoever. The wall was inherently weak, defective and unsupported and was in danger of collapsing at any time.

On November 21, 1956 the plaintiffs, while in the exercise of due care and diligence, were performing their duties as employees of the subcontractor on a staging adjacent to and alongside the wall in question when, without warning, it suddenly collapsed, injuring both plaintiffs. They presented their claims to the city as required by law and, upon the city council's refusal to satisfy their claims, they commenced these actions against defendant city treasurer.

Although the remaining allegations of the declarations sound in negligence, plaintiffs are in fact claiming that the facts alleged constitute a nuisance and that therefore they have stated a cause of action based on nuisance. The declarations do not allege that the wall abuts on a public highway. See *Gibbons* v. *Fitzpatrick*, 56 R. I. 39.

The first count further alleges that it was the duty of the city to use due care to furnish the general contractor with plans and specifications free of defects, so as not to endanger the safety of persons who were lawfully upon the premises; that the city breached such duty by negligently furnishing defective plans; and that the wall erected in accordance with the plans and specifications "was inherently weak, defective and unsupported, and was in imminent danger of collapsing, and thereby constituted a nuisance."

In the second count plaintiffs further allege that the general contractor agreed to erect the school subject to supervision and control by a certain architect who acted as the agent of the city; that the wall was erected by the general contractor under such supervision and control; that the wall was a danger to persons lawfully upon the premises; that

the wall continued to stand for an unreasonable length of time prior to the accident, as the city by its agents knew or in the exercise of due care should have known; that it was the duty of the city to use reasonable care to see that the wall was braced; and that it failed to do so and negligently permitted it to remain unsupported for a long period of time, "thereby creating a nuisance."

The third count alleges that the city engaged an architect to prepare the plans and specifications; that he agreed to engage a "Clerk of the Works" to perform "continuous on site inspection" with power to control the manner of erection as agent of the city and to rectify any defect in the course of construction; that the architect prepared the plans and specifications and hired a clerk of the works; that the contractor agreed to act subject to such control of the clerk of the works; that the unsupported wall continued to stand for an unreasonable length of time prior to the accident, as the city by its agents knew or should have known; that it was the duty of the city to see to it that the wall was braced or repaired; and that the city negligently permitted the wall to stand unsupported for a long period of time prior to the accident, "thereby creating a nuisance."

The fourth count alleges, in addition to the general allegations already mentioned, that the general contractor agreed to erect the building subject to inspection by the building inspector of the city, as to compliance with the building laws and safety factors, with power in the inspector to order the general contractor to repair any portion which might constitute a safety factor; that the general contractor, acting under inspection of the building inspector, erected a defective wall; that the wall continued to stand for an unreasonable length of time; that the city and its agents knew or should have known about the defective condition of the wall; that it became and was the duty of the city to use reasonable care to see to it that the wall was braced; and that notwithstanding such duty, the city al-

lowed it to remain in a defective condition for a long period of time prior to the accident, "thereby creating a nuisance."

Each count of the declarations also alleges that as a result of the inherent weakness and lack of support of the wall and due to the negligence of the city, its servants or agents, plaintiffs sustained the injuries complained of in these actions.

The defendant demurred to each of the counts on the following grounds: 1. The declaration fails to allege facts upon which the defendant is chargeable with negligence. 2. The declaration fails to allege a legal duty owed plaintiff by defendant. 3. The declaration fails to allege the breach of a legal duty owed plaintiff by defendant. 4. The declaration fails to set forth with reasonable certainty the nature of defendant's negligence. 5. The city of Cranston, as a matter of law, is not liable for the negligence alleged in plaintiff's declaration since at the time of said alleged occurrences, the city of Cranston, its agents and servants, were engaged in the performance of a governmental function. 6. The declaration fails to state a cause of action against the city of Cranston or against defendant in his capacity as treasurer of the city of Cranston.

As we have already stated, the allegations in each count of the declarations sound in negligence. With respect to such allegations, the trial justice held that no cause of action was stated against the city because, upon the facts alleged, the city was engaged in the performance of a governmental function and therefore was not liable for negligence, in the absence of a statute imposing liability. Such ruling is in accordance with well-established law in this state and requires no further discussion. *Wroblewski* v. *Clark*, 88 R. I. 235.

In considering the question whether the facts alleged stated a cause of action in nuisance, the trial justice treated the allegations of negligence as mere surplusage. His ruling is in accordance with the decision of this court. *Braun* v.

*Iannotti*, 54 R. I. 469; *Sullivan* v. *Waterman*, 20 R. I. 372.

After an exhaustive review and analysis of the law of nuisance, the trial justice held that the facts alleged by plaintiffs did not constitute an action in nuisance.

The plaintiffs concede that the facts alleged do not constitute an absolute nuisance, but they contend that this was a nuisance created by the city's negligence and since plaintiffs were lawfully on the premises they have a cause of action in nuisance against the city. In other words they argue that the city owed these plaintiffs or any other persons lawfully on the premises a duty not to create or participate in the creation of a nuisance. In our opinion this contention is without merit.

Their argument that the negligence of the city created the alleged nuisance and that as a result thereof they were injured begs the question for the simple reason that the basic issue in these cases is whether the facts alleged constitute an action in nuisance. This requires in the first instance a determination of the question of what is an actionable nuisance.

We agree with the statement of the trial justice that "actionable nuisances fall into two, and only two, classifications, public nuisances and private nuisances." A private nuisance involves an interference with the use or enjoyment of land. As stated in 4 Restatement, Torts, p. 217, an action for private nuisance "* * * has traditionally been restricted to invasions of interests in the use and enjoyment of land, and while a possessor of land is allowed to recover incidental damages for harms to his person or chattels in an action for private nuisance, the action is not available for the protection of those interests to a person who has no property rights or privileges in land." See also *Randolph* v. *Karno Smith Co.*, 15 N. J. Misc. 261, and Prosser, Torts (2d ed.), chap. 14, §72, p. 405.

The declarations contain no allegation that plaintiffs had

any interest in land and therefore they do not state a cause of action for private nuisance. See *Henson* v. *Beckwith,* 20 R. I. 165, 167.

The question remains whether the facts alleged constitute a public nuisance entitling plaintiffs to bring private actions. A public nuisance has been described by Prosser, *supra,* §71, p. 401, as follows:

> "A public nuisance is an act or omission which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all. A private individual may maintain an action for a public nuisance only if he suffers special damage, distinct from that common to the public."

And on page 402 Prosser states that "the nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several." For an excellent discussion of this problem see *Kilts* v. *Board of Supervisors,* 162 Mich. 646.

The declarations contain no allegation that the acts complained of interfered with any interest of plaintiffs common to the general public. Although plaintiffs were lawfully on the premises, they were there as employees of a subcontractor and not as part of the general public. Stated another way, the acts or omissions alleged affected only persons on the city's premises, not the general public, and therefore such allegations do not constitute a public nuisance entitling plaintiffs to bring private actions.

We have examined carefully the cases and authorities cited by the plaintiffs. It will serve no useful purpose to discuss them in detail because in our opinion they do not support the plaintiffs' position. No actionable nuisance having been alleged, it becomes unnecessary to consider the question of governmental immunity.

In each case the plaintiff's exception is overruled, and the cases are remitted to the superior court for further proceedings.

*Edward I. Friedman, Howard I. Lipsey,* for plaintiffs.

*Edward W. Day, Jr.,* City Solicitor, *Christopher T. Del-Sesto, Jr., Assistant City Solicitor,* for City of Cranston, for defendant.