DECISION
This case was tried before the Court without a jury. The matter was appealed from the Third Division District Court and tried before this Court de-novo. This case was previously considered by the Supreme Court on appeal from an earlier decision and remanded to this Court with instructions "to make findings of fact on the merits of the case, and issue a decision and judgment." Val-GioiaProperties, LLC v. Blamires, 18 A.3d 545, 549 (R.I., 2011).
 I. FINDINGS OF FACT
Val-Gioia Properties, LLC (Val-Gioia) owned land in Johnston, Rhode Island. Some of its land is a vacant lot in a wooded area behind industrial buildings of Val-Gioia. In the 1980s Val-Gioia fenced off this parcel. The vacant lot is adjacent to several other parcels including property of the Blamires' family.
Earl Blamires and Brian Blamires used the rear of the adjacent Blamires property and the vacant lot for dumping. This was done without any consent of Val-Gioia. On *Page 2 
this area they would place old leaves, brush and other wastes knowing that the debris would eventually travel down the slope onto the Val-Gioia vacant lot. By 2003 the Blamires were using this area regularly for dumping.
In the spring of 2004 a complaint was made to the Johnston Police Department regarding dumping and the condition of the vacant lot. Officer Mark Boisvert was dispatched to the area to investigate. He spoke with Mrs. Dufresne, who the officer described as "an owner of another adjacent parcel", and Earl Blamires. Mr. Blamires informed the police officers that he and his son would regularly dump waste in the Val-Gioia lot. Mr. Blamires agreed to stop his dumping. The Blamires were constructing a garage on their lot in 2004. In 2006 the Blamires installed a fence behind the garage, which blocked the slope to the vacant lot.
In July 2006 Val-Gioia received a Notice of Violation from the Johnston Building Office ordering it to clear the debris of the vacant lot. Val-Gioia received estimates of $2,000 to remove and reinstall a fence, and $4,400 to clear debris (see Exhibits 6, 7, and 8). Clearing the debris required a removal of some evergreens, the use of heavy equipment and the temporary removal of a fence — all to access the site. The dump material included yard waste, heavy equipment, batteries, an old refrigerator, and some other material.
 II. PRESENTATION OF WITNESSES
The Court found Johnston Police Officer Boisvert very credible. While his memory of the 2004 conversation was not complete, it was unblemished by other evidence. *Page 3 
Mr. Pagliarini was highly credible. He was formal, thorough and concerned about the accuracy of his answers. He was thoughtful, respectful and cooperative with each attorney. He was reflective in that he attempted to answer the questions truthfully and completely. There were no inconsistencies in his testimony.
The Court found Brian Blamires to be less than frank. He denied entering onto the property, contrary to the testimony others, even though he recorded a lengthy video of the property during the trial. His testimony contained other contradictions. He claimed he did not know Mr. Pagliarini (the principal of Val-Gioia), but from his other testimony, he knew who Mr. Pagliarini was as Mr. Pagliarini protested the erection of the Blamires' fence in 2006.
Earl Blamires was respectful and cooperative, but his testimony was self-serving. He denied telling the officer that he dumped waste on the parcel. Mr. Blamires claimed that he saw others dump and reported it to Mr. Pagliarini. Clearly, he had animosity for Mr. Pagliarini as Mr. Pagliarini removed a passage between the properties.
There was no reason to question the credibility of Ms. Blamires. A pleasant woman, she did not observe the outside activity and admits to not hearing the key portions of the conversation between her husband and the police officer.
 III. ANALYSIS A. Trespass
Count One is entitled, "Trespass and Ejectment". In Rhode Island, this term normally refers to the removal of a tenant of a commercial or residential unit. In this *Page 4 
action, the case was more of a traditional trespass action, so as to force the removal of an uninterested party from Val-Gioia's land, and to recover damages for this wrong.
Trespass is defined as any unauthorized intrusion or invasion of private premises onto the land of another. A trespasser is defined as a person who enters upon the property of another without any right, lawful authority, or express or implied invitation, permission or license, not in performance of any duties to the owner but merely for the trespasser's own purpose, pleasure or convenience. A trespasser is an individual who intentionally and without consent enters into the property of another.Ferreira v. Strack, 652 A.2d 965, 969 (R.I. 1995);Berberian v. Avery, 99 R.I. 77, 205 A.2d 579 (1964);Heroux v. Katt, 76 R.I. 122, 68 A.2d 25 (1949).
To recover for trespass, a party must show (1) the adverse party intentionally entered onto the owner's property; and (2) plaintiff had a rightful possession of such property. State v.Verrecchia, 766 A.2d 377 (R.I. 2001); Berberian v. Avery,99 R.I. 77, 205 A.2d 579 (1964). One who has consent or privilege and enters onto another's property is not a trespasser.Ferreira at 969. See also Bennett v.Napolitano, 746 A.2d 138 (R.I. 2000). The Law of Torts, 4th ed., at 63, William L. Prosser classifies trespass to land as an intentional tort, but adds:
 The defendant is liable for an intentional entry although he has acted in good faith, under the mistaken belief, however reasonable, that he has committed no wrong. Thus, he is a trespasser, although he believes that the land is his own . . . Prosser at 74 (footnotes omitted).
Ownership of the lot in Val-Gioia was established at trial and undisputed by defendants. It has been found as a fact that both Mr. Earl Blamires and Mr. Brian Blamires entered into and upon the property. Neither had any consent to do so, and each *Page 5 
did so knowing that the property was owned by Val-Gioia. Moreover, both gentlemen did so to dispose of yard wastes at the site. Although no disposal was shown to have occurred after the Blamires installed a fence in 2006, some of the yard wastes dumped was dumped on the site by Blamires.
Accordingly, Earl Blamires and Brian Blamires are each liable in trespass.
 B. Nuisance
Count Two sounds in Nuisance. Nuisance actions tend to focus on the extent of the injury as opposed to the extent of any breach of duty.[1] While liability is not imposed in every instance where one's conduct has some detrimental effect on another, liability is appropriate in those cases in which the harm or risk to one is greater than he ought to be required to bear under the circumstances. See 4 Restatement (second)Torts, § 822, comment (g) at 112 (1979). As our high Court has said:
 [d]istinguised from negligence liability, liability in nuisance is predicated upon unreasonable injury rather than upon unreasonable conduct. Thus, plaintiffs may recover in nuisance despite the otherwise non-tortious nature of the conduct which creates the injury. Wood v. Picillo, 443 A.2d, 1244, 1248 (R.I. 1982), citing Braun v. Iannotti, 54 R.I. 469, 471, (1934).
Val-Gioia claims that the defendants are liable in nuisance for the dumping of waste on the Val-Gioia property. A private nuisance "arises from the unreasonable use of one's property that materially interferes with a neighbor's physical comfort . . . use of . . . real estate." Hennessey v. Pyne, 694 A.2d 691, 695 (R.I. 1997) quoting Hydro-Manufacturing, Inc. v. Kayser-Roth Corp.640 A.2d 950, 957 (R.I. 1994) and Weida v. Ferry,493 A.2d 824, 826 (R.I. 1985). Obviously, the dumping of waste on another's *Page 6 
property constitutes a material and unreasonable interference with the use and enjoyment by the owner of his property.
In Citizens for Preservation of Waterman Lake v. Davis,420 A.2d 53, 60 (R.I. 1980), a neighborhood association sought to stop the alleged ongoing pollution and extreme noise form a nearby landfill operation. The court held that an actionable, private nuisance "involves an interference with the use and enjoyment of land. It involves a material interference with the ordinary physical comfort or the reasonable use of one's property." Citizens forPreservation of Waterman Lake v. Davis,420 A.2d 53, 60 (R.I. 1980) quoting Iafrate v. Ramsden,96 R.I. 216, 221, 190 A.2d 473, 476 (1963).
Val-Gioia's loss of use and enjoyment is not minimal. Although the property that was harmed was not actively occupied and was a wooded, fenced off parcel, Val-Gioia was cited by governmental authorities and obligated to clean it. Cleaning the debris required more than dragging it to the curb: To get to the parcel, Val-Gioia needed to remove a fence, bring in a crane to pull the debris out of a culvert, dispose of the waste and then reinstall the fence. Val-Gioia's resultant harm was significant. Clearly, the Blamires should be responsible for the harm and damages caused to their neighbor.
 C. Relief
As indicated, the harm to Val-Gioia was substantial. The amount of the bills to remove the debris was not significantly disputed. The cost to remove and then replace the fence is $2,000. The cost to remove and dispose of the waste is $4,400, as established by the testimony of Raymond Acciardo. Again, the cost is significant because of the *Page 7 
limited access, the requirement for specialized heavy equipment to be brought into a wooded area, and the discarding of the debris.
Nevertheless, the harm shown to have been caused by Earl and Brian Blamires was limited. Although there are refrigerators and metallic objects in the waste-pile, it was never demonstrated that the Blamires disposed of all the waste found on the Val Gioia parcel. As other joint tortfeasors dumped debris in the area, including Co-defendant Ms. Dufresne, it would be unreasonable to infer all this waste was dumped by the Blamires, without more proof. Accordingly, the court sets a disposal figure of $5,500, as it does not find that the refrigerator, battery or other metal objects were dumped by the Blamires.
 IV. CONCLUSION
For the reasons stated, judgment is granted in favor of Val-Gioia Properties, LLC and against Earl and Brian Blamires, jointly and severally for the amount of $ 5,500 plus prejudgment interest, post-judgment interest and costs. As the plaintiff failed to establish the liability of Mrs. Sylvia Blamires, judgment is entered for Mrs. Blamires and against Val-Gioia on all counts of the complaint. Counsel for plaintiff shall prepare a judgment within ten days of receipt of this Decision.
[1] While not deciding the issue, it is noteworthy that a negligence action may have been demonstrated. *Page 1