HENRY C. JUDD ET AL. *vs.* THE CITY OF HARTFORD.

First Judicial District, Hartford, October Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A city is liable for an injury to property from the setting back of sewage during a severe but not extraordinary storm, when such overflow was due to its negligent omission to remove certain temporary obstructions placed in the sewer during its construction or alteration.

Even if the duty as to the construction or alteration of the sewer in question was governmental, the duty of the defendant thereafter, to remove temporary appliances which if left in the sewer would render it unserviceable or inadequate, was a new and ministerial one.

A municipal corporation is a person in law, capable of inflicting injuries, and liable to suit by him who suffers them, unless they flow from or are incident to the performance of a governmental duty.

A city cannot avoid a judgment for a common-law liability, by pleading
that it has no money on hand out of which the judgment can be
paid.

Argued October 6th—decided October 27th, 1899.

ACTION to recover damages for an injury claimed to have
been caused by the defendant's negligence in stopping up the
outlet of a sewer, whereby the sewage was set back in the
basement of the plaintiffs' storehouse, brought to the Superior
Court in Hartford County and tried to the court, *Thayer, J.;*
facts found and judgment rendered for the plaintiffs for
$2,940 damages, and appeal by the defendant for alleged
errors in the rulings of the court. *No error.*

The finding stated the following facts : The plaintiffs
owned a store on High street in Hartford. The defendant
city, in 1873, laid a sewer in the street, with which the store
was connected, and which was adequate to drain the area
that it was built to drain. The owners of the store were
assessed for benefits and paid the assessment. On July 29th,
1897, the city was engaged in building an intercepting sewer
to divert the sewage from the High street sewer and other
sewers from an outlet theretofore used into Park river, and
send it into the Connecticut river. For this purpose the city
had cut off the High street sewer 100 feet below the plain-
tiffs' store, and constructed a man-hole there, with a 12-inch
pipe at the bottom running into the intercepting sewer, and
a 24-inch brick storm-water sewer at the top, running under
High street in the line of the old sewer to the Park river.
A stone was set as a dam in the lower part of this storm-
water sewer, to keep all sewage out of it, leaving only the
storm water to flow over the dam. These sewer connections
on High street were completed by July 1st, and were ade-
quate to the purposes for which they were designed.

The city's agents had previously used a wooden " center "
in constructing the 24-inch storm sewer, on which to turn
the arch forming the upper half of said sewer at the point
where it left the man-hole. This center had a solid semi-
circular board head, measuring 24 inches across the base.

After the arch was built, instead of removing the center, as should have been done, it was negligently left by the defendant's agents lying across the lower portion of the storm sewer, so as to obstruct the flow of water. A fortnight before July 29th, the defendant's agents also blocked up the outlet from the man-hole to the intercepting sewer with bags of sand, to prevent any sewage or water from flowing through it into another man-hole situated below it, which they were then constructing. By these two obstructions the capacity of the outlet of the High street man-hole near the plaintiffs' store was reduced to a quarter of the capacity of the sewer leading into this man-hole. No notice of these obstructions was given to the plaintiffs.

There was a severe rain storm on July 29th, which filled the High street sewer so that, by reason of these obstructions, the water and sewage were forced into the plaintiffs' store, doing serious damage.

The defendant claimed that the storm was an act of God for the consequences of which it could not be held liable; that leaving the center in the sewer was an error of judgment, for which it was not liable in damages; that the service performed by the defendant, in the construction of said sewer, was one in which the defendant had no particular interest and from which it derived no special benefit in its corporate capacity, and that negligence of the employees of the defendant in the construction of said sewer was not imputable to the defendant; that it was authorized to build sewers for the public when the public necessity required, and assess the expense upon properties specially benefited, and that no obligation rested upon the defendant to make the sewers and drains constructed under such authority sufficient and ample, and no obligation thereafter existed to keep the same free from defects and obstructions; that the contractors, employees and appointees of the street department and public works are not the agents and servants of the city, charged with a public service, for whose negligence in the discharge of a governmental duty an action lies against the city without being expressly given; that no right of action existed against

the city because none was given by charter or statutes; and that the construction of this sewer was a public governmental duty, to remove a nuisance, and that it is not liable for the negligence of some or all of its agents, whom it is obliged to employ, and not liable for the negligence of the agent, if any, in the construction of the sewer or in a matter outside of such construction and entirely collateral thereto.

The court, however, rendered judgment against the city, from which it appealed.

*William J. McConville,* for the appellant (defendant).

*Arthur L. Shipman,* for the appellees (plaintiffs).

BALDWIN, J.   The city was held liable to the plaintiffs, not because it planned and constructed an inadequate sewer, but because, after planning and constructing an adequate sewer, it left obstructions in it, placed there for temporary purposes, which its agents carelessly omitted to remove, after those purposes had been accomplished.

For negligence in such matters a municipal corporation cannot escape responsibility on account of its public character.   It is a person in law, capable of inflicting injuries, and liable to suit by him who suffers them, unless they flow from or are incident to the performance of a governmental duty. Municipal duties are governmental when they are imposed by the State for the benefit of the general public.   They may sometimes have that character, also, when imposed in pursuance of a general policy, manifested by legislation affecting similar corporations, for the particular advantage of the inhabitants of the municipality, and only through this, and indirectly, for the benefit of the people at large.   *Jewett* v. *New Haven,* 38 Conn. 368.   Whether an instance of this nature is furnished by the provisions of the defendant's charter respecting the construction and maintenance of sewers, it is unnecessary to inquire.   The injury to the plaintiffs was due to no fault of plan or construction, and to no omission to make proper repairs.   It was of the same nature as one that might be suffered by the occupant of a new

house who strikes his foot in a dark passage against an axe or stumbles over a heap of shavings which the builder's workmen have carelessly left upon the floor. The failure to sweep out the shavings or pick up the tools is something distinct from the work of building the house. It could only occur after the building was finished. So, even if the charter duty of the defendant as to the construction or alteration of the sewer with which the plaintiffs' store was connected, was governmental, its duty, after that had been performed, to clean up, and remove any temporary appliances which, if left where they were, would render the sewer unserviceable or inadequate, was a new and ministerial one. It was a simple and definite duty arising under fixed conditions, and implied by law. *State* v. *Staub*, 61 Conn. 553, 568. No one else could perform it. The sewer was part of the defendant's property and under its exclusive control. Its functions in regard to its construction or reconstruction had been discharged: the occasion for an exercise of those as to its repair had not arrived; and if its agents had before been acting as agents of the law, they now acted, or neglected to act, as its proper servants, subject to the full application of the rule of *respondeat superior*. *Norwalk Gaslight Co.* v. *Norwalk*, 63 Conn. 495, 530. "Municipal immunity does not reach beyond governmental duty." *Weed* v. *Greenwich*, 45 Conn. 170, 183. Had the city authorities expressly directed the workmen employed upon the sewer not to remove the "center" or the sandbags, when to allow them to remain was to turn this piece of city property into a nuisance to those who had paid for the right to share in its use, and were dependent upon its efficiency for the enjoyment of the houses and stores which it was built to serve, an action could certainly have been maintained for any resulting injury. *Mootry* v. *Danbury*, 45 Conn. 550, 556; *Hoyt* v. *Danbury*, 69 id. 341, 351; *Morgan* v. *Danbury*, 67 id. 484, 496. It lies equally in the absence of such directions. The cause of action is the failure to remove the obstructions. Whether this was an intentional or an unintentional omission of duty is immaterial.

Nor is it of any consequence that the city, in altering its sewerage system, was relying upon funds derived from bonds issued under an amendment to its charter (11 Special Laws, p. 429), which provided that the sums thus borrowed should be used for such alterations or for purchase of real estate for parks, "and for no other purposes whatever." It cannot avoid a judgment for a common-law liability by pleading that it has no money on hand out of which it can be paid.

That the storm which was the immediate occasion of the flooding of the plaintiffs' cellar was a severe one can constitute no defense. It was severe but not extraordinary. *Diamond Match Co.* v. *New Haven*, 55 Conn. 510, 526.

There is no error.

In this opinion the other judges concurred.