MARY HANNON, P. P. A. vs. THE CITY OF WATERBURY.

Third Judicial District, Bridgeport, October Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

An appeal does not lie from a judgment of nonsuit, but only from the denial of a motion to set it aside.

A municipality engaged in the performance of a public duty, and not for its own special corporate benefit or pecuniary profit, will be immune from liability for injuries occasioned therein.

Municipal governmental duties are of two classes: first, those which are imposed by the State for the benefit of the general public and second, those which are prescribed in pursuance of a general policy, manifested by legislation affecting similar corporations, for the particular advantage of the local inhabitants and only indirectly for the benefit of the people at large.

Governmental duties may be imposed or authorized by charter or by the general law, and they may be mandatory or permissive; the test is whether the nature of the act or function is governmental.

A duty does not cease to be governmental because the municipality exacts from those who enjoy its performance a small fee which is a mere incident of the service rendered and from which no profit is derived.

The city of Waterbury, through its board of education, maintained in one of its high school buildings a swimming pool, to which it admitted children and adults at fees of ten and twenty cents, respectively, and offered them instruction in swimming at $1 and $2 for courses of ten lessons. This revenue was used exclusively in providing for, but did not meet, the expense of operating the pool. *Held* that in thus promoting the health, cleanliness and welfare of its citizens and in teaching them the means of guarding their lives against drowning, the city was performing a governmental duty.

Argued October 28th, 1926—decided April 11th, 1927.

ACTION to recover damages for personal injuries, alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and tried to the jury before *Dickenson, J.;* the court nonsuited the plaintiff and from the denial

of her motion to set aside the judgment entered thereon, the plaintiff appealed. *No error.*

*James M. Lynch* and *J. Gregory Lynch,* for the appellant (plaintiff).

*Charles O'Connor,* with whom was *Edward J. McDonald,* for the appellee (defendant).

WHEELER, C. J. No appeal lay from the granting of the judgment of nonsuit. The appeal, if any, lay from the denial of plaintiff's motion to set aside the judgment, and this is made the second assignment of error. The evidence offered by the plaintiff tended to prove these facts: The city of Waterbury owned and maintained through its board of education in the Wilby High School a swimming pool and locker rooms containing metal lockers used in connection with the pool, for the purpose of affording to the children and adults of the city the privileges of this pool. It organized and maintained at the school during the summer months of each year swimming classes and employed instructors in swimming in order to give to such patrons this instruction. Children were permitted to use the pool on paying ten cents and to join the classes on payment of one dollar for ten lessons and have the use of the metal lockers and pool, while adults were required to pay twenty cents or two dollars for ten lessons together with the use of the pool and lockers. The sums so paid were kept in a special fund by the city treasurer and disbursed by vote of the board of education to pay for teachers, supervisors, janitors, printing, advertising, water-wings, prizes, and other incidental expenses in connection with the operation of the pool. The board of finance, which had absolute control over the finances of the city, had no con-

trol over this fund. The maintenance of the pool was a part of the public-school system of the city and for the purpose of teaching the children to swim in order to save themselves from possible future mishap and to develop their bodies, and as a result of this, their minds. The money taken in did not pay the entire expense of operating the pool. It did not pay for the large amount of electricity used in operating the motor, drying the hair and lighting, coal, water, chemicals used in the water, nor for the rental value or maintenance of the part of the building used and the equipment, all of which the city provided.

The lower edge of one of these lockers, which had been installed in the dressing room by the city three years prior to the accident, was sharp and jagged and located about eight inches from the tile floor, which was wet and slippery. The plaintiff had finished using the swimming pool and was standing in the locker room talking to a girl friend when she stepped off the rubber mat upon the tile floor to let two girls pass and then had just started for her locker, her left foot being on the mat, when her right foot slipped on the wet floor and went under the side of the metal locker, the edge of which turned down instead of up, and caught her ankle and cut the tendon attached to the lower part of the heel causing the injuries for which she sues to recover damages. The plaintiff did not know of this condition of the locker and no one had warned her of it. The same janitor had been in charge of this dressing room ever since the lockers had been installed and he, or his assistants, had had daily opportunity to observe and inspect the locker.

The court granted the motion for a nonsuit upon the grounds that the city, in maintaining the swimming pool, was (a) performing a governmental function

and hence not liable for the failure to discharge such duty with due care, and (b) was not chargeable with negligence because it had had no notice of the condition of the locker through which the plaintiff's injury is alleged to have occurred. If the first of these grounds is well taken, the nonsuit was properly granted and there is no occasion for passing upon the claimed negligence of the defendant. "When a municipality is engaged in the performance of a public duty for the public benefit, and not for its own corporate profit, it will be immune from liability for injuries done in the performance of such acts." *Richmond* v. *Norwich,* 96 Conn. 582, 588, 115 Atl. 11. This principle is too firmly intrenched in repeated decisions of this court to be overturned or modified. Municipal duties which are governmental belong to one of two classes, those imposed "by the State for the benefit of the general public," and those which arise out of legislation "imposed in pursuance of a general policy, manifested by legislation affecting similar corporations, for the particular advantage of the inhabitants of the municipality, and only through this, and indirectly, for the benefit of the people at large." *Judd* v. *Hartford,* 72 Conn. 350, 353, 44 Atl. 510. For example, the maintenance of the public peace or prevention of disease would fall within the first class; *Keefe* v. *Union,* 76 Conn. 160, 166, 56 Atl. 571; while the maintenance of a park system would fall within the second class. The one is for the general public good; the other for the especial benefit of the inhabitants of the municipality in which the park system exists, and indirectly for the benefit of the people at large. Both of these classes are governmental in their character. "A governmental duty may be imposed or authorized as well by charter as by general law." *Pope* v. *New Haven,* 91 Conn. 79, 82, 99 Atl. 51. The maintenance

of a swimming pool for the benefit primarily of the children and adults of Waterbury was within the charter power of that municipality. This appeal does not contest the power of this city, or of its board of education, to exercise this power; it does contest the legality of the manner of its exercise. The contention is that the function being performed was for the especial corporate benefit of the municipality and not for the common good of the public of Waterbury and hence, indirectly, of the public at large. Governmental duty is determined from a consideration of the nature of the duty imposed or the privilege conferred, and of the character of the act done or the function performed. The test to apply is to ascertain whether the act or function has within it the "special corporate benefit or pecuniary profit" of the municipality affected. *Tindley* v. *Salem,* 137 Mass. 171. Whether the duty is directly imposed upon the city or permissive, that is, one which it voluntarily assumed, as in this case, does not change the character of the act or function. The duty in either case will be governmental if the nature and character of act or function be such. *Pope* v. *New Haven, supra,* p. 82.

Public parks, playgrounds, swimming pools, and public baths or bathing houses are all examples of municipal functions undertaken for the public benefit, and unless maintained for the corporate profit of the municipality are within the rule of governmental immunity. *Bolster* v. *Lawrence,* 225 Mass. 387, 390, 114 N. E. 722. The charge of a small fee covering a part of the cost of the maintenance of the pool in paying a supervisor, instructors, janitors and the like, while the municipality furnished the building, the swimming pool, the apparatus and equipment in connection therewith, the coal, electricity, water, chemicals and other necessaries for the maintenance of the

pool, did not except the maintenance of the pool from the rule of governmental immunity. The city was not deriving a profit from this small fee, the charge was a mere incident of the public service rendered in the performance of a governmental duty. The maintenance of the pool was not for the purpose of deriving a corporate profit, but for the promotion of the education of the people of the city in teaching them to swim and thus guarding their lives against the accident of drowning, promoting a most useful and beneficial form of exercise, and teaching cleanliness of habits of living and thus preserving their health. We cite some of the decisions where the principle of governmental immunity was applied in situations where the enjoyment of the public service was conditioned upon a charge or fee made but not for the corporate profit of the municipality. A summer camp was maintained by a city for its children at prescribed charges to be paid by them, giving them a vacation with care, board and lodging at the camp. The court said of this public enterprise: "It rests on precisely the same basis as children's playgrounds and public parks within the city limits. It is conducted for the sole purpose of promoting the public interest by maintaining the public health, and has nothing of the character of a business enterprise. That a small charge is made upon those children going to and staying at the camp for the purpose of assisting in defraying the cost of maintenance of such children while at the camp does not change the situation." Kellar v. Los Angeles, 179 Cal. 605, 610, 178 Pac. 505. In an action for damages against a city for injury suffered while using the privileges provided by a city in its public park, the court held: "Neither the character of the municipal function nor the exemption from liability is changed by a small incidental revenue derived from the rental of city build-

ings used in connection with the public park of the municipal beach." *Caughlin* v. *Omaha,* 103 Neb. 726, 728, 174 N. W. 220; *Jones* v. *Atlanta,* 35 Ga. App. 376, 133 S. E. 521; *Cornelisen* v. *Atlanta,* 19 Ga. App. 436, 91 S. E. 415; *Lamport & Holt, Ltd.* v. *Board of Commissioners,* 137 La. 784, 69 So. 174; *Curran* v. *Boston,* 151 Mass. 505, 509, 510, 24 N. E. 781.

The city of Waterbury enjoyed governmental immunity from liability for the act of alleged negligence.

There is no error.

In this opinion the other judges concurred.